COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| DAVID URIEL-RAMIREZ, | § | No. 08-11-00132-CR |
| Appellant, | § | |
| | § | Appeal from the |
| v. | § | |
| | § | Criminal District Court Number One |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20100D00533) |
| | § | |

## **O P I N I O N**

Appellant, David Uriel-Ramirez, appeals the trial court's denial of his motion to suppress. We affirm.

## **BACKGROUND**

By indictment, Appellant was charged with possession with intent to deliver cocaine (Count I), and possession of marijuana (Count II). Appellant filed a pretrial motion to suppress evidence in which he asserted that the search of his business, which led to the discovery of the cocaine and marijuana, was effected without a warrant, without probable cause or reasonable suspicion, and without valid consent.

At the suppression hearing, Detective Thomas Lawrence, who was assigned to the El Paso Police Department's narcotics division and stash-house unit, was involved in an investigation of Appellant's business, an auto shop. When Detective Lawrence, who was in plain clothes, and other officers entered the garage area of the business, which was open to the public, he announced, "Hello, police," and Appellant and another person responded from the back of the garage. Detective Lawrence displayed his badge and identification and informed Appellant, who had

identified himself as the owner of the business, that the narcotics division had received information that Appellant's business was being used to store drugs. After Appellant denied that drugs were on the premises, Detective Lawrence asked Appellant for permission to conduct a search. When Appellant asked if a search warrant had been obtained, Detective Lawrence indicated that he did not have one. According to Detective Lawrence, Appellant then extended his hand and said, "Go ahead."

When Detective Lawrence asked Appellant to present identification, Appellant went to a desk area and was followed by Detective Jerry Humphrey. Upon Appellant's return, Detective Lawrence observed Appellant drop a plastic bag on the floor and, upon retrieving it, Detective Lawrence saw that it contained a substance which he believed to be cocaine. Detective Humphrey, who had remained in the desk area, called out, "Evidence." This implied to the other officers that Detective Humphrey had seen something in the area, and when Detective Lawrence again asked Appellant if there were any drugs in the area, Appellant replied, "No." At this time in the initial encounter, the detectives had not commenced to search the business or its premises. Thereafter, Appellant and Detective Lawrence walked toward a door next to the desk and Detective Lawrence observed bundles of what appeared to be narcotics located inside a room next to the desk. Although Detective Lawrence did not smell marijuana, the other detectives began searching the garage and found bundles of marijuana in the room by the desk.

Appellant, who was present throughout the search, never revoked or withdrew his consent to search his business but refused to consent to a search of his home when requested by Detective Lawrence. Upon cross-examination, defense counsel elicited testimony from Detective Lawrence that it is common practice for the narcotics unit to rely on oral or verbal consent even

though the police department has written consent forms, and that he did not use a written consent form on the day Appellant's business was searched.  Detective Lawrence also explained that he had not informed Appellant that he could refuse to consent to a search because he was not required by law to do so.  Detective Lawrence denied that Appellant had requested to speak with his attorney, acknowledged that the officers did not have probable cause to conduct a search before approaching Appellant's business, and repeated that Appellant had given his consent for the officers to search the business premises.

Appellant denied consenting to a search of his business and stated that he had advised the officers that they could not proceed without a warrant.  According to Appellant, after the officers stated that they had no warrant, he told them, "Then you cannot go inside.  Go ahead, but I'm not letting you go in on my permission."  Appellant also testified that he told the officers, "If there's something else, I could call my lawyer[.]"  Appellant testified that he was never informed that he could refuse to consent to a search and he denied dropping the bag of cocaine.  On cross-examination, Appellant denied that the officers had requested consent to search his residence.

Detective Frank Gutierrez testified during the State's rebuttal that he, too, observed Appellant drop the bag of cocaine, and testified on cross-examination that the standard operating procedure of the stash-house unit was to rely on "valid verbal consents" rather than using written consent forms in obtaining consent to search.  He also explained that although officers sometimes inform a person that he has the right to refuse to consent, they do not always do so because they are not required to provide this information to a person.  Detective Humphrey testified that he heard portions of Detective Lawrence's conversation with Appellant.  Detective Humphrey heard: (1)

3

Detective Lawrence ask for Appellant's consent to search; (2) Appellant ask Detective Lawrence if he had a warrant; (3) Detective Lawrence respond that he did not have a warrant; and (4) Appellant say, "Go ahead."

Appellant argued that any consent he provided was involuntarily given because he was not advised that he could refuse to consent. He also argued that the officers' testimony was not credible, that it was not reasonable to believe that he would drop a bag of cocaine in the presence of the officers, and that the trial court should believe his testimony over that of the officers. The State argued that an assessment of credibility favored the detectives.

After hearing evidence and arguments of counsel, the trial court orally denied Appellant's motion to suppress and later entered written findings of fact and conclusions of law in which it accepted the detectives' testimony regarding Appellant's consent and the events leading to the discovery of the contraband, and found that Appellant neither asked the detectives to secure a warrant or terminate the search of his business. The trial court determined that Appellant's consent to search was voluntary and concluded that: (1) Detective Lawrence engaged in a consensual encounter with Appellant; (2) Appellant was not under arrest at the time; (3) Appellant gave Detective Lawrence verbal consent to search his business; (4) Appellant's verbal consent was never limited or withdrawn; and (5) Appellant's verbal consent to search his business was given without threat or coercion.

## DISCUSSION

*Consent to Search and Standard of Review*

A search conducted with a person's voluntary consent is an exception to an otherwise "*per se* unreasonable" search that has been conducted without a warrant based on probable cause. *See*

4

*Meekins v. State*, 340 S.W.3d 454, 458 (Tex.Crim.App. 2011). Consent to search may be communicated by words, action, or circumstantial evidence showing implied consent. *Id*. To be voluntary under the Fourth and Fourteenth Amendments, however, consent must not be coerced by explicit or implicit means nor by implied threat or covert force. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Meekins*, 340 S.W.3d at 458-59.

Whether a person's consent to search was voluntary is a question of fact to be determined in each case from the totality of the circumstances of the particular situation. *Meekins*, 340 S.W.3d at 459; *Reasor v. State*, 12 S.W.3d 813, 818 (Tex.Crim.App. 2000). Factors which a court may examine when determining whether a person voluntarily consented to a search include, but are not limited to, the person's age, education and intelligence, whether the consenting person was in custody, whether the person was arrested at gunpoint, whether the person had the option of refusing consent, the constitutional advice given, the length of the detention, the repetitiveness of any questioning, and the use of physical punishment. *See Reasor*, 12 S.W.3d at 818. The ultimate question to be determined is whether the individual's will has been overborne and his capacity for self-determination critically impaired, such that his consent to search must have been involuntary. *United States v. Watson*, 423 U.S. 411, 424, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976), *quoting Schneckloth*, 412 U.S. at 225 (internal quotations omitted); *Meekins*, 340 S.W.3d at 459.

The State must prove the voluntariness of a person's consent to search by clear and convincing evidence. The trial judge is the exclusive trier of fact as to the credibility of the witnesses' testimony at a suppression hearing, and may choose to believe or disbelieve any or all of a witness's testimony. *See St. George v. State*, 237 S.W.3d 720, 725 (Tex.Crim.App. 2007); *see also Amador v. State*, 221 S.W.3d 666, 673 (Tex.Crim.App. 2007); *Peralta v. State*, 338

S.W.3d 598, 607 (Tex.App.–El Paso 2010, no pet.). We do not engage in our own factual review of the trial court's decision. *Garcia v. State*, 15 S.W.3d 533, 535 (Tex.Crim.App. 2000).

Utilizing a bifurcated standard of review, we give almost total deference to a trial court's ruling on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, and review *de novo* those application-of-law-to-fact questions that do not turn on credibility and demeanor. *See Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex.Crim.App. 2005). We review a trial court's ruling on a motion to suppress evidence viewing all of the evidence in the light most favorable to the trial court's ruling. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex.Crim.App. 2008). Because a determination of the validity and voluntariness of a person's consent to search is a fact issue and is necessarily fact intensive, we accept the trial court's finding on the voluntariness issue unless it is clearly erroneous. *Meekins*, 340 S.W.3d at 460. We afford to the prevailing party the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom. *Meekins*, 340 S.W.3d at 460; *Garcia-Cantu*, 253 S.W.3d at 241. We review the trial court's legal ruling *de novo* unless the trial court's supported-by-the-record explicit fact findings are also dispositive of the legal ruling. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex.Crim.App. 2006).

In Issue One, Appellant complains that the State failed to meet its burden of producing evidence to establish probable cause and that the trial court erred in finding that probable cause existed because the State's witnesses and evidence provided no factual basis to support such a finding. We disagree.

We note first that the State never asserted that it had probable cause to conduct a warrantless search of Appellant's business, and the trial court never found probable cause existed

to do so.  Rather, the State's proffered basis for seeking a denial of Appellant's suppression motion was that Appellant voluntarily consented to the search, an exception to the warrant-supported-by-probable-cause requirement, and the trial court found that Appellant's consent to search was voluntary.  *See Meekins*, 340 S.W.3d at 458.  Thus, the State was not required to demonstrate that probable cause existed for the search.   Because the trial court did not make a finding that probable cause existed, Appellant has failed to show that the trial court erred.  Issue One is overruled.

In Issue Two, Appellant specifically asserts that: (1) he did not consent to a search of his business premises; (2) the voluntariness of his consent, if any, is measured by his understanding that he had an option to refuse giving consent to search and knew enough about the officers' proposed activity to make an informed decision about it; and (3) his consent was involuntarily given because the detectives did not inform him of his right to refuse granting them consent to search.   We disagree.

The trial court heard conflicting evidence regarding whether Appellant had voluntarily consented to a search of his business premises.   Detectives Lawrence and Humphrey testified that after asking Appellant if they could search his business premises and informing Appellant that they did not have a warrant to conduct a search, Appellant stated, "Go ahead."   This evidence is sufficient to support the trial court's finding that Appellant consented to the search, as an ordinary, objectively-reasonable person could have understood that Appellant was consenting to the search of the premises.  *See Meekins*, 340 S.W.3d at 458-59; *see also, e.g., Johnson v. State*, 68 S.W.3d 644, 652-54 (Tex.Crim.App. 2002).   Appellant has failed to show that the trial court's finding that Appellant consented to the search was "clearly erroneous."

Appellant's contention that his consent was involuntarily given also fails. Contrary to his assertion, voluntariness is not measured by Appellant's "understanding of whether he had an option to refuse the search . . . ." Under a totality-of-the-circumstances analysis, whether an officer has advised an individual of his right to refuse consent may be a relevant factor in determining voluntariness of consent, but it is not dispositive and does not automatically render the person's consent to search involuntary. [1] *See Harrison v. State*, 205 S.W.3d 549, 553 (Tex.Crim.App. 2006); *Johnson*, 68 S.W.3d at 653.

Based upon the contradictory suppression evidence, the trial court could have reasonably believed that Appellant voluntarily consented to the search despite his contrary testimony, which the trial court was free to disbelieve. *See Johnson*, 68 S.W.3d at 652-54. In *Johnson*, the defendant's consent to search was found to be voluntary where officers had arrested the defendant pursuant to a warrant, the handcuffed defendant answered officers' request to search by stating, "Sure, go ahead," and pointing to a room, and the officers testified that no threats were made, no *Miranda* warnings were given, no written consent-to-search form was used, and the defendant was not advised of right to refuse consent to search. *See Johnson*, 68 S.W.3d at 652-54. Unlike the defendant in *Johnson*, Appellant was not arrested nor placed in handcuffs at the time consent to search was requested and given. Moreover, although Appellant presented no testimony that he did not know he had a right to refuse consent, the suppression evidence demonstrated that he possessed such knowledge as Appellant refused the detectives' request that Appellant consent to a search of his home. Consequently, these facts are more favorable to a finding of voluntariness

---

[1] We find Appellant's reliance upon *Vargas v. State*, 18 S.W.3d 247, 254 (Tex.App.–Waco 2000, pet. ref'd) to be misguided. Although the *Vargas* Court found that among the factors supporting a finding of voluntariness was the fact that the officer advised Vargas of his right to refuse consent, the Court did not suggest nor require that an admonishment regarding the right to refuse a search was necessary for a finding of voluntariness. *See id.*

than those in *Johnson*. *See Johnson*, 68 S.W.3d at 652-54.

Appellant has failed to show that the trial court's denial of his motion to suppress evidence was clearly erroneous. From this record, we are unable to find that Appellant's will was overborne and his capacity for self-determination critically impaired, such that his consent to search must have been involuntary. *See Watson*, 423 U.S. at 424; *Schneckloth*, 412 U.S. at 225; *Meekins*, 340 S.W.3d at 459. The trial court's findings of fact are supported by the record and show that Appellant clearly, unequivocally, and voluntarily consented to the search of his business premises. *See Johnson*, 68 S.W.3d at 652-54. Issue Two is overruled.

## CONCLUSION

The trial court's judgment is affirmed.


GUADALUPE RIVERA, Justice

October 31, 2012

Before McClure, C.J., Rivera, J., and Antcliff, J.

(Publish)

9